SOUTH SIDE STATE BANK *v.* SNYDER ET UX.

[No. 14,087.   Filed May 1, 1931.]

434

*Church & Chester*, for appellant.
*Conley & Conley* and *Harman & Wider*, for appellees.

CURTIS, J.—This action was upon the amended complaint of appellees Lucius O. Snyder and Fern Snyder, husband and wife, against appellee George A. Chamberlin, receiver for the Huffman Improvement Company, a corporation, and the appellant, South Side State Bank. The material allegations of the complaint, in substance are: That on September 1, 1923, appellees Snyder and Snyder purchased, upon a written contract, certain real estate from the Huffman Improvement Company at the agreed price of $5,300, to be paid as follows: $1,200 cash at the time of the contract, and the balance to be paid quarterly in payments of not less than $120 on December 1, March 1, June 1 and September 1, thereafter, for a period of three years, when the entire balance was to become due and payable. The deferred payments were to bear interest at 7 per cent per annum, payable quarterly. In addition, the purchasers were to pay all taxes, assessments or impositions that would be legally levied upon said land, and they also agreed to pay all taxes, assessments and impositions which would be charged to or come against the Huffman Improvement Company because of such indebtedness. It is further alleged that said real estate consisted of a house

and lot and that the Snyders went into possession thereof on the date of said contract and have continuously since that time occupied the same as a dwelling house; that said contract also required the Snyders to procure and pay the fire insurance on said property and to deposit said policies of insurance with the Huffman Improvement Company; that the Snyders paid said $1,200 and said further quarterly payments as hereinafter set forth, and also paid the taxes and assessments; that they performed each and all of the conditions and covenants of said contract and agreement by them to. be performed at the time and in the manner as provided in said contract; that on September 6, 1923 (six days after the date of said contract), the Huffman Improvement Company conveyed said real estate to David Lechlitner and Della Lechlitner; that the Snyders knew nothing of said conveyance and continued to make their payments to the Huffman Improvement Company as provided in said contract; that, on June 1, 1926, the Snyders paid $1,000 upon said contract to the Huffman Improvement Company, and that, on or about September 1, 1926 (the date for the last payment under the contract), they learned for the first time of the Lechlitner deed, at which time they were told by the Huffman Improvement Company that it had pledged said land contract, along with others, to the Lechlitners as security for a loan, and that it would be satisfactory for the Snyders to continue to pay in partial payments on said contract until such time as they were notified not to do so by the Lechlitners, or until such time as the Lechlitners called for the balance of said purchase money; that, pursuant thereto, they continued to make such partial payments until they. were finally notified by the Lechlitners that they had conveyed said real estate back to the Huffman Improvement Company; that, on August 25, 1928, they paid $1,000 on said contract to the Huffman Improvement

Company, at which time there was left a balance to be paid on said contract amounting to $607.97; that they notified the Huffman Improvement Company that they were ready, able and willing to pay said balance, but that, before said business could be consummated, said Huffman Improvement Company was, on September 27, 1928, placed in the hands of a receiver; that they would have tendered said balance to said receiver and asked the said receiver to procure an order of court to execute to them a deed for said real estate had it not been for the intervention and alleged claim of appellant South Side State Bank; that, on or about September 14, 1927, without the knowledge or consent of the Snyders, the Huffman Improvement Company executed to said bank its mortgage encumbering said real estate in the sum of $2,800; that they knew nothing of said mortgage until after the last mentioned $1,000 payment was made, at which time there was left only the $607.97 balance due, as aforesaid; that, at the time the bank acquired its mortgage, the Snyders owed $2,249.69 upon said contract and that said bank stood by and allowed the Snyders to make their payments on said contract without in any manner informing them of said mortgage; that, at all such times, they were occupying said real estate as a home, and paying for same under said contract, and that said bank had knowledge of those facts, and that they were wholly ignorant of the existence of said mortgage. It is further alleged that the bank's rights and equity are junior and subordinate and inferior to the rights of said Snyders, and that said bank is made a party to answer to its alleged rights and interests; that they now tender into court the said balance of $607.97, plus interest, for the use of such parties as are entitled thereto, and ask the court to order the said receiver to execute a deed to said real estate to them, and that their title be

quieted as against the mortgage lien of appellant bank, and for all other proper relief.

To this amended complaint, the said receiver filed·an answer in two paragraphs, the first being a general denial and the second admitting the said contract with the Snyders, and admitting also that the said sum of $607.97, plus interest, tendered by the Snyders, is the correct balance due, and alleging that said receiver was ready to execute said deed to the Snyders upon the payment of said sum, and the order of court approving said deed.

The appellant filed a motion to make said amended complaint more specific, which was overruled and an exception taken. Whereupon, appellant filed a demurrer for want of sufficient facts, which, likewise, was overruled, and an exception taken. Appellant then filed an answer in two paragraphs, the first being a general denial, and the second paragraph alleging, in substance, the execution of the mortgage, and that the Snyders were occupying said premises at the time said mortgage was executed and saw the officers of the bank inspecting said real estate for said loan, and knew that the bank was making a loan thereon, and that said Snyders concealed from said bank any claim they had in said real estate; that said Huffman Improvement Company is insolvent, and that the money thus loaned cannot be recovered back except through said mortgage lien.

To this second paragraph of answer of the appellant, appellees Snyder and Snyder filed a general denial. The appellant bank also filed a cross-complaint against both the Snyders and against the appellee receiver, which alleged, in substance, the execution of the said mortgage to the bank by the Huffman Improvement Company, to secure a loan of $2,800 evidenced by a note in that sum due three months after its date, September 14, 1927, upon which there was alleged to be due the sum of $2,000, plus interest and attorney's fees, and asking

judgment thereon and for a foreclosure of its said mortgage, and an order of sale of said real estate to satisfy same. To this cross-complaint, the receiver filed a general denial. The Snyders filed a motion to strike out this cross-complaint as to them only, which motion was sustained and exception given to the bank.

Upon the issues thus formed, the cause was tried and judgment rendered requiring appellees Snyder and Snyder to pay to the receiver within 10 days the sum of $662.46, and that, upon such payment, the receiver should execute a deed to said real estate to the Snyders, and that the title of the Snyders in said real estate be quieted as against said mortgage lien of said bank, that the bank have a preferred claim against said receiver for said $662.46, and that the balance of its indebtedness amounting to $1,511.38 be allowed as a general claim in said receivership. From this judgment, the appellant, South Side State Bank, appealed.

In its motion for a new trial, said appellant specified the following grounds: (1) The decision of the court is contrary to law; (2) the decision of the court is not sustained by sufficient evidence; and (3) the assessment of the amount of recovery is erroneous, being too small.

Appellant, in the errors relied upon for reversal, says: (1) The lower court erred in overruling appellant's motion for a new trial; (2) the court erred in overruling appellant's motion to make the amended complaint of appellees Lucius O. Snyder and Fern Snyder more specific; (3) the court erred in overruling appellant's demurrer to the amended complaint of appellees Lucius O. Snyder and Fern Snyder; and (4) the court erred in sustaining the motion of appellees Lucius O. Snyder and Fern Snyder to strike out and reject appellant's cross-complaint as to plaintiffs only.

Under the appellant's Points and Authorities, it discusses the alleged error of the court in overruling its

motion to require the plaintiffs to make their amended complaint more specific. We have carefully examined the amended complaint. This amended complaint asked for the specific performance of a written contract for the purchase of real estate, which contract was made a part of the pleading as an exhibit. We believe it stated the facts constituting the alleged cause of action with sufficient definiteness, and with plain and concise enough language to enable a person of common understanding to know what was intended as required by §359 Burns 1926. It is not necessary that evidence should be pleaded. It alleged that all payments were made by the plaintiffs except the payment of said sum of $607.97, prior to the time that the plaintiffs had any notice of the existence of the mortgage held by the appellant. It further alleged that the said sum of $607.97, plus interest thereon, was tendered into court for the use and benefit of such parties as the court might determine were entitled thereto. The court, in our opinion, did not err in overruling the motion of the appellant to make this amended complaint more specific.

It is next argued in the Points and Authorities that the court erred in overruling the appellant's demurrer to the plaintiffs' amended complaint. The contract upon which the appellees Snyder and Snyder relied was a written contract, and was made a part of the amended complaint. This contract was not recorded, and it is mainly upon this ground that the appellant bases its demurrer. In this connection, it is to be noted that the amended complaint alleged specifically that, on the date of the execution of the contract, the Snyders moved into said property and continued to occupy the same as a home openly and with the full knowledge of the appellant at the time of the making of the mortgage of appellant. The law in this state has

been so well settled on this question that it is scarcely necessary to cite authorities to the effect that the possession of real estate under a claim of title or interest is notice to third persons, and that a contract under which they claim their rights need not be recorded where said possession is open and notorious. *Railroadmen's Bldg., etc., Assn.* v. *Rifner* (1928), 88 Ind. App. 580, 163 N. E. 263; *Kirkham* v. *Moore* (1903), 30 Ind. App. 549, 65 N. E. 1042; *Blair* v. *Whittaker* (1903), 31 Ind. App. 664, 69 N. E. 182. Numerous authorities are cited to the same effect in the cases above cited.

The amended complaint specifically alleged that all payments were made under the contract as it required before the Snyders had any knowledge or notice of any kind or character as to the appellant's mortgage, except the payment of said sum of $607.97. It is not contended by the Snyders that, as to this last-mentioned sum, their contract is superior to the lien of the bank. By the amended complaint, the Snyders tendered said sum of money into court for the use and benefit of such parties as the court might find should be entitled thereto. The amended complaint alleges that, soon after the Snyders entered into said contract, the Huffman Improvement Company conveyed said real estate to David Lechlitner and Della Lechlitner; that the Snyders did not learn of that conveyance until a short time before the expiration of the three-year term contained in their contract, and that, at that time, the Huffman Improvement Company informed them that it was not prepared to carry out its contract, but that it would be satisfactory for the Snyders to continue to make quarterly payments, and that the said quarterly payments were, thereafter, continued by the Snyders, with the full consent and at the request of the Huffman Improvement Company. It is true that the contract contained the following provision:

"And in case of the failure of the party of the second part to make either of the payments or any part thereof, or perform any of the covenants on the part of the second party hereby made and entered into at the time and in the manner herein provided, this contract shall become and is hereby made a lease of the above-described tract from the first party hereto to second party, and the payments herein provided for shall be and are hereby made a rental for said premises for the several terms between the times of said payments, and upon such failure this contract shall, AT THE OPTION OF THE PARTY OF THE FIRST PART, BE FORFEITED AND DETERMINED and the party of the second part shall forfeit all payments made by said second party on this contract, and such payments shall be retained by the said party of the first part in full satisfaction and in liquidation of all damages by first party sustained, and said first party shall have the right to re-enter and take possession of the premises aforesaid with all improvements thereon without notice." The contract further provided as follows: "It is mutually agreed by and between the parties hereto that the time of payment shall be the essence of this contract." It will be noted that the first provision quoted from the contract contains an option in the party of the first part to declare the contract forfeited, but this was only an option, and the facts pleaded in the amended complaint clearly showed that this option had not been exercised, and that the Huffman Improvement Company accepted payments upon the contract after the three-year term of the contract. The cases are clear in this state that the provision that time shall be of the essence of the contract can be waived, and we think the amended complaint clearly sets up facts showing that there had been such a waiver. We are, therefore, of the opinion that the lower court did not err in overruling the appellant's demurrer to the amended complaint. *Clay-*

*ton* v. *Fletcher Savings & Trust Co.* (1927), 89 Ind. App. 431, 155 N. E. 539; *Baker* v. *Eades* (1930), 90 Ind. App. 664, 169 N. E. 686.

It is next contended by the appellant that the court erred in sustaining the motion to strike out the cross-complaint of the appellant as against the Snyders. Under the issues as formed after the cross-complaint was stricken out as to the Snyders only, the appellant was able to introduce all of the evidence it would have been able to introduce had said cross-complaint not been stricken out. There can be no question but that the correct result was reached by the trial court in this cause. The alleged error in striking out said cross-complaint as to the Snyders (if such was error) was not harmful or prejudicial to the appellant, and where a correct result is reached, this court will not reverse a cause where such error was not harmful. *Barkley* v. *Barkley* (1914), 182 Ind. 322, 106 N. E. 609, L. R. A. 1915B 678; *Pittsburgh, etc., R. Co.* v. *Rushton* (1925), 90 Ind. App. 227, 149 N. E. 652.

Under point 4 of appellant's Points and Authorities, it seeks to invoke the rule that in equity no lien exists in favor of one who is in default. If we understand what the appellant means by this, it is that, since the Snyders did not complete their payments within the three-year period provided for in their contract, they thereby became in default, even though their time for payment had been extended by the Huffman Improvement Company from whom they were purchasing this real estate. The evidence is clear and uncontradicted that, before the three-year period expired, the Huffman Improvement Company explained to the Snyders that they were not in a position to execute the deed owing to the fact that this contract with the Snyders had been pledged with the Lechlitners as security for a loan and that the Snyders could safely pay quarterly

payments as they had in the past. The Snyders, according to the evidence, relied upon this statement and continued to pay under the contract in quarterly installments. Under these facts, there could be no question whatever but that there had been no grounds for forfeiture of the contract of the Snyders. The evidence further discloses that the right to declare a forfeiture was optional with the Huffman Improvement Company and that it did not exercise said option and did not forfeit said contract, and that it in fact did just the opposite— it accepted these payments from the Snyders after the three-year term of the contract expired, and, in its answer filed in this cause, the receiver for the Huffman Improvement Company stated that the amount tendered by the Snyders was correct and that they ought to be entitled to their deed, and, in fact, the receiver asked that the court enter an order requiring the receiver to execute and deliver the deed.

Under point 5 of its Points and Authorities, the appellant says the court erred in holding that the plaintiffs had a lien superior to the mortgage of the appellant. The court, in effect, held that as to the $607.97, plus the interest, the appellant had a preferred lien thereon. This holding of the court was no doubt based upon the fact that this was the amount owing by the Snyders at the time they received notice of the appellant's mortgage. The Snyders were required within 10 days to pay this sum of money, together with interest, to the receiver before receiving their deed. In effect, the court held that, as to that sum, the lien of the bank's mortgage was superior to the lien of the Snyders, and that, in order to discharge that part of the lien, the Snyders were required to pay said money as aforesaid. The bank was held to have a preferred claim as to said money. This, without any question, was the correct holding of the court.

The appellant, under propositions 6, 7, 8, 9, 10, 11, 12, 13 and 14, seeks mainly to raise questions that are not applied to the facts of this case, and which are mere abstract propositions of law. In so far as they apply here, they have heretofore in this opinion been discussed. We find no error was committed by the trial court in connection therewith.

We have examined the evidence in this case, and we are satisfied that the appellant bank is in no position to complain. At the time it made its loan, it made no investigation to ascertain what rights, if any, the Snyders had, who were living in the property openly and notoriously. Its mortgage was for three months, and, at that time, if it had diligently pursued its rights under the mortgage, it could have started a foreclosure and could have given the Snyders notice and thereby all, or practically all, of its mortgage could have been paid out of the balance of the payments due by the Snyders, but the bank chose rather to stand by and not give notice to the Snyders of its mortgage. When the Snyders found out about the mortgage of the bank, they refused to make further payments upon the contract, but, at that time, they owed only $607.97, plus the interest. This money they brought into court for the benefit of the bank. We are satisfied that the lower court committed no reversible error and that a correct result was reached.

Judgment affirmed.